37D01-2304-CT-000317

Filed: 4/10/2023 9:21 AM
Clerk
Jasper County, Indiana

Jasper Superior Court

USDC IN/ND case 4:23-cv-00047-PPS-APR   document 7   filed 04/10/23   page 1 of 15

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE JASPER COUNTY SUPERIOR COURT |
| | ) SS | |
| COUNTY OF JASPER | ) | |

| | | |
|---|---|---|
| **EDWARD P. REGAN** | ) | CAUSE NO.: |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY DEMANDED** |
| **BANKUNITED, NATIONAL ASSOCIATION; CARRINGTON MORTGAGE SERVICES, LLC;** and **MORTGAGE CONTRACTING SERVICES, LLC** | ) ) ) ) ) ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT

Plaintiff Edward P. Regan, through his attorneys, states as follows for his Complaint against Defendants BankUnited, National Association ("BankUnited"), Carrington Mortgage Services, LLC ("Carrington"), and Mortgage Contracting Services, LLC ("MCS"):

### INTRODUCTION

1. This lawsuit arises from outrageous conduct by a mortgage lender and its servicing agents: shortly after Defendant BankUnited purchased Plaintiff Ed Regan's 1999 mortgage loan from Chase, the Defendants unilaterally declared his home abandoned, broke into his home, changed the locks, poured chemicals into his plumbing system, and caused his property hazard insurance company to issue a notice of cancellation of coverage.

2. Though Defendants' actions would warrant serious criminal punishment if committed by an individual, Defendants BankUnited and Carrington denied any wrongdoing. They refused to fix the property damage they caused or to otherwise make Mr. Regan whole.

Defendant MCS did not respond at all.  The self-help and strong-arm extra-judicial tactics used by Defendants must be deterred and punished.

3. Absent deterrence, other Indiana families could suffer the same abuse Mr. Regan suffered.  If they fall behind on their mortgage and leave town for a long weekend or a work trip, Defendants believe they can deem a home vacant or abandoned, and then break in, change the locks, photograph the family's intimate living areas, and wreck the plumbing system, thereby forcing the family already short on funds to choose between paying the abusive mortgage company and fixing the damage caused by the mortgage company to make their home habitable again.  Mr. Regan, therefore, prays for swift and meaningful relief from this Court, both to make him whole and to punish and deter misconduct.

## PARTIES

4. Plaintiff Edward P. Regan is a natural person and citizen of Jasper County, Indiana.

5. Defendant BankUnited, National Association ("BankUnited") is, on information and belief, a national banking association with a principal place of business in Florida.

6. Defendant Carrington Mortgage Services, LLC ("Carrington") is, on information and belief, a Delaware limited liability company with a principal place of business in California.

7. Defendant Mortgage Contracting Services, LLC ("MCS") is, on information and belief, a Delaware limited liability company with a principal place of business in New York.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under Indiana Code § 33-28-1-2.

9. Venue is proper in this Court, and this Court is the preferred venue, because Plaintiff resides in Jasper County and the unlawful conduct that caused Plaintiff's damages occurred in Jasper County.

**FACTS**

10. Plaintiff Edward P. Regan lives at 2401 N. 900 West in Rensselaer. He gave a purchase money mortgage secured by that property to Firstar Bank, N.A. in 1999. Carrington, as the mortgage loan servicer, notified Mr. Regan by letter dated August 3, 2022, that BankUnited had purchased his mortgage loan.

11. In August 2022, days after Defendant BankUnited purchased Mr. Regan's mortgage loan, Defendant MCS unlawfully entered Plaintiff Regan's home while Mr. Regan was away. On information and belief, MCS used a crowbar or sledgehammer to breach the peace and gain access to the home. It removed and changed the locks and left the home in disarray. On the pretext that the home was "abandoned," Defendant MCS left a note urging Regan to call MCS to confirm that he still lived there. Regan called MCS with his attorney and informed MCS that his home was occupied, not abandoned, and that he was trying to catch up on monthly mortgage payments.

12. After informing both MCS and Carrington that his home was <u>not</u> in fact vacant or abandoned, Mr. Regan made mortgage payments to Defendant Carrington in the amount of $1,205.29 on each of August 22, 2022, September 14, 2022, October 6, 2022, and November 2, 2022.

13. With no advance notice to Mr. Regan, Defendant Carrington directed MCS to secure the property in November 2022, again on the pretext that Mr. Regan's home was vacant of personal property and abandoned.

14. Just five days after Mr. Regan made a mortgage payment, Defendant MCS broke into Mr. Regan's home on November 7, 2022, replaced the locks a second time, screwed the back door into the door frame, and absconded with a new Brinks two doorknob and lock set that Mr. Regan had recently purchased. MCS also left the home in disarray, with parts from Mr. Regan's previous lockset strewn outside and down the hall.

15. MCS also poured unknown "winterizing" chemicals – an unspecified antifreeze – into Regan's plumbing, which connects to a septic field. Antifreeze is toxic and should not be drained into a septic field. MCS broke one of the toilet fixtures in the process of winterizing the plumbing.

16. Mr. Regan and his son discovered the damage during the afternoon of November 7, 2022. Locked out of their home by the Defendants, Regan was able to lift his son up to gain access through a window.

17. Regan's home was clearly inhabited at the time of both break-ins. His home and garage contained clothing and items used in daily life as well as valuable items of personal property, including collections of antique printing press equipment in one bedroom and the basement, a substantial collection of sports cards in a second bedroom, and boats in the garage.

18. On information and belief, Defendants sought to manufacture mortgage defaults that would allow them to seize Mr. Regan's home through foreclosure. For example, the mortgage required Regan to maintain property hazard insurance coverage on the property. On information and belief, one of the Defendants reported or published information that caused Mr. Regan's property hazard insurance company to send him a notice of cancellation of insurance in August of 2022.

19. Mr. Regan succeeded in efforts to keep the insurance coverage in place in August of 2022. Months later, Defendant Carrington failed in its obligations to pay certain hazard insurance premiums from Regan's escrow account with Carrington. Defendant Carrington knew that any failure to pay premiums would result in cancellation of coverage and an event of default under the mortgage.

20. Each Defendant acted intentionally, or was at minimum grossly negligent, and engaged in overt acts, as demonstrated by the following facts and others to be adduced in discovery:

- Defendants failed to provide notice to Regan in both August and November before breaking into and damaging his home;

- Defendants decided to commit repeated, destructive break-ins despite clear evidence of habitation in Regan's home, telephone conversations with both MCS and Carrington informing them that his home was not abandoned, and payments on his mortgage;

- Defendant MCS left a note telling Regan to call a <u>disconnected telephone number</u> to refute Defendants' pretextual assertion of abandonment; and

- Defendants caused the cancellation of Mr. Regan's property insurance and failed to pay premiums due from his escrow account.

21. Defendants did not obtain a court order to allow them to enter Regan's home and did not seek a determination by a court or law enforcement authority that the property had been abandoned under Ind. Code § 36-7-37-1. Defendants further did not comply with the United States Department of Housing and Urban Development's policies requiring efforts to contact Mr. Regan about the occupancy of Mr. Regan's home and to provide written notice of any supposed determination of abandonment.

22. On information and belief, Defendant Carrington frequently instructs its agents like MCS to enter and re-key or replace the locks of homes of Indiana families who fall behind

on their mortgages. Such forcible entry and changing of locks constitutes an intentional dispossession of Regan and others from their homes and belongings – without a foreclosure action or any other involvement of the judiciary or law enforcement.

23. Defendants Carrington and BankUnited ratified the conduct of MCS.

24. The actions of Defendants caused damages to Mr. Regan's home and well-being. He lives in fear of Defendants again locking him and his family out of their own home, damaging his fixtures, and "inspecting" and photographing his personal effects. Defendants' abusive tactics violated the sanctity of Mr. Regan's home and Indiana law and caused Regan to suffer from emotional distress. Defendants' shocking, unlawful, and abusive practices should be punished and deterred. Mr. Regan should be made whole. He prays for swift relief.

## COUNT I
### Trespass v. BankUnited, Carrington & MCS

25. Regan incorporates and restates all foregoing paragraphs as if fully set forth herein.

26. At all relevant times, Regan possessed and lived in his home. He had not abandoned his home. The property was not vacant, but instead filled with personal property such as boats in the garage and antiques and collectibles in the bedrooms.

27. In August 2022, and again in November 2022, Defendant MCS, at the instance of Carrington and BankUnited, entered Regan's property without a legal right or authorization to do so. The mortgage and Indiana law only permitted a visual inspection of the property without entry into any structure, and only if the property was actually vacant or abandoned.

28. Defendants' unlawful entries caused damages to Regan's home and property, caused him emotional distress, constituted a breach of the peace, and deprived Regan of the use and quiet enjoyment of his own home.

29. Defendants are liable to Regan for trespass.

30. <u>Concerted Action / Civil Conspiracy</u>.  Defendants BankUnited, Carrington, and MCS combined and worked in concert to commit the acts described in this Count.  Each committed overt acts in furtherance of this conspiracy.  Defendants' conspiracy proximately caused damages to Regan, as described herein. As co-conspirators, Defendants are jointly liable to Regan.

**WHEREFORE**, Regan requests that this Court enter a judgment in his favor awarding monetary damages, injunctive relief against further trespass, punitive damages, prejudgment interest, costs of suit, and all other just and proper relief.

## COUNT II
### Conversion/Trespass to Chattels v. BankUnited, Carrington & MCS

31. Regan incorporates and restates all foregoing paragraphs as if fully set forth herein.

32. In August 2022, and again in November 2022, Defendant MCS, at the instance of Carrington and BankUnited, entered Regan's home without his consent or law enforcement authorization, changed the locks, damaged the doors and door frames, tampered with the plumbing, broke a toilet fixture, and absconded with a new two door and lock set, all under the pretext that Regan had abandoned or vacated his own home.

33. These acts appropriated Regan's personal property: Defendants twice changed the locks, damaged Regan's doors and door frames, and prevented use of the plumbing system by loading the lines with an unspecified chemical antifreeze that is toxic to septic fields.

34. The apparent purpose of this conversion and damage to chattel property was to deprive Regan of their use and to force him to expend his limited funds to make property repairs at a time when he was struggling to get current on his mortgage payments.

7

35.     Entering the home twice, making unauthorized and damaging changes, and posting a sham notice regarding "abandonment" are all plainly acts intended to exclude Regan and defy Regan's rights to the property.

36.     Defendants' conversion of Regan's property caused him significant damages. Defendants are liable to Regan for those damages.

37.     <u>Concerted Action / Civil Conspiracy</u>.  Defendants BankUnited, Carrington, and MCS combined and worked in concert to commit the acts described in this Count.  Each committed overt acts in furtherance of this conspiracy.  Defendants' conspiracy proximately caused damages to Regan, as described herein. As co-conspirators, Defendants are jointly liable to Regan.

**WHEREFORE**, Regan requests that this Court enter a judgment in his favor awarding monetary damages, injunctive relief, punitive damages, prejudgment interest, costs of suit, and all other just and proper relief.

## COUNT III
### Tortious Interference with Contract v. Carrington & MCS

38.     Regan incorporates and restates all foregoing paragraphs as if fully set forth herein.

39.     In August 2022, Regan was insured by a valid property hazard insurance policy issued by Indiana Farm Bureau Insurance ("IFB").

40.     In August 2022, Regan received a telephone call from IFB informing him that IFB had received a notice to cancel his insurance policy due to vacancy.

41.     On information and belief, Defendants Carrington and MCS intentionally elicited IFB's cancellation of Regan's policy on the pretextual grounds of vacancy and/or abandonment of his home.

8

42. Through discussion with IFB, and following a visit to his home in which IFB verified that he lived there, Regan was able to maintain his IFB policy.

43. Months later, Regan received a bill for premiums due to IFB that had not been paid from the escrow account administered by Carrington.

44. Because Regan has lived at his property at all times, the interference by Defendants Carrington and MCS with Regan's IFB insurance policy lacked any justification. Unless undertaken as part of an effort to expedite foreclosure, Defendants' interference with Regan's property hazard insurance coverage was contrary and potentially damaging to the interests of lender BankUnited.

45. Defendants' connivance damaged Regan.

46. Defendants are liable to Regan for their tortious interference with his insurance contract with IFB.

47. <u>Concerted Action / Civil Conspiracy</u>.  Defendants Carrington and MCS combined and worked in concert to commit the acts described in this Count.  Each committed overt acts in furtherance of this conspiracy.  These Defendants' conspiracy proximately caused damages to Regan, as described herein. As co-conspirators, these Defendants are jointly liable to Regan.

**WHEREFORE**, Regan requests that this Court enter a judgment in his favor awarding monetary damages, punitive damages, prejudgment interest, costs of suit, and all other just and proper relief.

## COUNT IV
**Indiana Crime Victims Relief Act (Ind. Code 34–24–3–1 *et seq.*) v. BankUnited, Carrington & MCS**

48. Regan incorporates and restates all foregoing paragraphs as if fully set forth herein.

49. Defendants' unlawful tactics violated Indiana criminal law, as described below, causing significant pecuniary losses and other damage to Regan.

50. Defendants committed the offense of **residential entry**, in violation of Ind. Code 35-43-2-1.5, by knowingly or intentionally breaking and entering Regan's home without his consent or other authorization.

51. Defendants committed the offense of **criminal mischief**, in violation of Ind. Code 35-43-1-2, by recklessly, knowingly, or intentionally damaging and defacing Regan's home.

52. Defendants committed the offense of **criminal trespass**, in violation of Ind. Code 35-43-2-2(b)(4), by knowingly or intentionally interfering with Regan's possession and use of his home without his consent.

53. Defendants committed the offense of **theft**, in violation of Ind. Code 35-43-4-2, by knowingly or intentionally exerting unauthorized control over Regan's home and its fixtures (including absconding with new doorknobs and locks Regan purchased), with the intent to deprive Regan of all or part of their value or use.

54. Defendants committed the offense of **criminal conversion**, in violation of Ind. Code 35-43-4-3, by knowingly or intentionally exerting unauthorized control over Regan's home, its fixtures, and Regan's personal property.

55. Each above offense is independently sufficient to establish liability under the Indiana Crime Victims Relief Act ("ICVRA"). Defendants are liable to Regan under the ICVRA for treble damages, attorney's fees, costs of suit, and other relief as prescribed in that statute.

56. Pursuant to Ind. Code § 35-41-2-4, "a person who knowingly or intentionally aids . . . another person to commit an offense commits that offense." As described herein, Defendant

10

MCS, at the instance of Carrington and BankUnited, committed the offenses described herein, all under the pretext of abandonment or vacancy.

57. Carrington and BankUnited knowingly and/or intentionally aided MCS's criminal acts by (a) ordering MCS's criminal actions and/or (b) paying MCS to commit them, (c) providing software or other resources for planning and/or reporting the criminal actions, and/or (d) providing MCS with a sham pretext to engage in criminal acts.  Carrington and BankUnited later ratified the conduct of MCS.  As such, Defendants Carrington and BankUnited are liable as principals for those crimes.

58. For these reasons, all Defendants are liable to Regan under the Indiana Crime Victims Relief Act for treble damages, attorney's fees, costs of suit, and other relief as prescribed by law.

59. <u>Concerted Action / Civil Conspiracy.</u>  All Defendants combined and worked in concert to commit the acts described in this Count.  Each Defendant committed overt acts in furtherance of this conspiracy.  These Defendants' conspiracy proximately caused damages to Regan, as described herein. As co-conspirators, these Defendants are jointly liable to Regan.

**WHEREFORE**, Regan requests that this Court enter a judgment in his favor awarding treble damages, reasonable attorney's fees, costs of suit, and all other just and proper relief.

## COUNT V
**Fair Debt Collection Practices Act (15 U.S.C. § 1692k) v. BankUnited, Carrington & MCS**

60. Regan incorporates and restates all foregoing paragraphs as if fully set forth herein.

61. The Fair Debt Collection Practices Act ("FDCPA") makes it unlawful for a debt collector to use "unfair or unconscionable means" to collect a debt. 15 U.S.C. § 1692a.

62. Defendants BankUnited, Carrington, and MCS are debt collectors within the meaning of the FDCPA, for several independently sufficient reasons:

   a. First, each uses "instrumentalit[ies] of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," in this case mortgage loan payments. 15 U.S.C. § 1692a.

   b. Second, Carrington and MCS, as agents of Bank United, "regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," here mortgage loan payments due to BankUnited. 15 U.S.C. § 1692a.

   c. Third, BankUnited, Carrington, and MCS use "instrumentalit[ies] of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests," in this instance mortgage security interests. 15 U.S.C. § 1692a.

63. BankUnited, Carrington, and MCS worked in concert to collect amounts due under Regan's mortgage. They used unconscionable means to do so.

64. Pursuant to the FDCPA, "unfair or unconscionable" actions giving rise to liability include "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6).

65. BankUnited, Carrington, and MCS had no present right to possession of Regan's home and property.

66. Accordingly, Defendants violated the FDCPA and are liable to Regan pursuant to section 1692k of the FDCPA.

**WHEREFORE**, Regan requests that this Court enter a judgment in his favor awarding damages, reasonable attorney's fees, costs of suit, and all other just and proper relief.

## COUNT VI
### Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5 *et seq.*) v. BankUnited, Carrington & MCS

67. Regan incorporates and restates all foregoing paragraphs as if fully set forth herein.

68. Pursuant to the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code § 24-5-0.5-3, a "supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."

69. A "debt collector" is a "supplier" within the meaning of the DCSA. Ind. Code § 24-5-0.5-2(a)(3) & (a)(13). The DCSA uses the FDCPA's definition of "debt collector." Ind. Code § 24-5-0.5-2(a)(13). As alleged above, BankUnited, Carrington, and MCS are debt collectors within the meaning of the FDCPA. Accordingly, they are "suppliers" for purposes of the DCSA.

70. Violations of the FDCPA are "deceptive acts" within the meaning of the DCSA. Ind. Code § 24-5-0.5-3(a)(20).

71. The DCSA's definition of "consumer transaction" includes "[t]he collection of or attempt to collect a debt by a debt collector." Ind. Code § 24-5-0.5-2(a)(1)(C).

72. Accordingly, efforts by BankUnited, Carrington, and MCS to collect mortgage loan debts owed by Regan are "deceptive acts" that are actionable under the DCSA if those acts would be a violation of the FDCPA.

73. BankUnited, Carrington, and MCS violated the FDCPA, damaging Regan. Accordingly, these Defendants have committed uncured or incurable deceptive acts within the

meaning of the DCSA and are liable to Regan for those acts. Ind. Code § 24-5-0.5-4.  Moreover, because Defendants' conduct was willful, the Court should award Regan treble damages and attorney's fees pursuant to the DCSA.

**WHEREFORE**, Regan requests that this Court enter a judgment in his favor awarding treble damages, reasonable attorney's fees, prejudgment interest, costs of suit, and all other just and proper relief.

## COUNT VII
### Invasion of Privacy by Intrusion v. BankUnited, Carrington & MCS

74. Regan incorporates and restates all foregoing paragraphs as if fully set forth herein.

75. Regan has a right to physical solitude and/or seclusion in his Indiana home.

76. By repeatedly breaking into and damaging Regan's home as described herein, Defendants intruded upon Regan's physical solitude and/or seclusion.

77. Such repeated break-ins would be shocking and/or objectionable to a reasonable person.

78. Such repeated break-ins damaged Regan.  In addition, Regan and his family live in fear and emotional distress that Defendants' unlawful conduct will recur if they fall behind on their mortgage and leave the property for any reason.

79. As a result, Defendants are liable to Regan for invasion of privacy by intrusion.

**WHEREFORE**, Regan requests that this Court enter a judgment in his favor awarding monetary damages, punitive damages, injunctive relief, prejudgment interest, costs of suit, and all other just and proper relief.

## JURY DEMAND

Regan hereby demands trial by jury of all issues so triable.

Dated: April 10, 2023　　　　　　　　　By: */s/ Tomas M. Thompson*

　　　　　　　　　　　　　　　　　　　Tomas M. Thompson (Atty # 37221-45)
　　　　　　　　　　　　　　　　　　　THOMPSON LEGAL LLC
　　　　　　　　　　　　　　　　　　　124 East State Street
　　　　　　　　　　　　　　　　　　　Morocco, IN 47963
　　　　　　　　　　　　　　　　　　　542 S. Dearborn St., 10th Floor
　　　　　　　　　　　　　　　　　　　Chicago, IL 60605
　　　　　　　　　　　　　　　　　　　Tel.: (312) 965-8934
　　　　　　　　　　　　　　　　　　　tom@thompsonlegal.org

　　　　　　　　　　　　　　　　　　　Daniel C. Blaney (Atty # 2772-98)
　　　　　　　　　　　　　　　　　　　BLANEY & WALTON
　　　　　　　　　　　　　　　　　　　124 East State Street
　　　　　　　　　　　　　　　　　　　P.O. Box 500
　　　　　　　　　　　　　　　　　　　Morocco, IN 47963
　　　　　　　　　　　　　　　　　　　Tel.: (219) 285-2008
　　　　　　　　　　　　　　　　　　　dblaney@blaneyandwalton.com